Prior to September 30, 2015, the following application... Japan's first female Prime Minister... There's no need to mention the gender and age of Japanese women,   Thus evenly distributed. Good afternoon, Your Honor. May it please the Court, my name is Yasmin Ekin and I represent the appellant Ricardo Figueroa. Ricardo was found guilty after jury trials of first degree murder and two counts of tent murder under an accountability theory, and also unlawful possession of a firearm by a street gang member and mob action. Our brief raises four issues, and for purposes of this argument, I intend to address Issue 1, which involves novel issues about granting of use immunity that were raised by trial counsel below, and Issue 4, our argument that Ricardo's sentence violates Illinois' Proportionate Penalties Clause. Now, as to that issue, though, I would also like to provide this Court with an update, and that is that this Court recently granted my motion to cite People v. House as additional authority. Just a few hours ago, the Supreme Court granted the State's PLA in-house in Case No. 125-124, and the State's PLA in-house, which I provided a copy for counsel, has true grounds. Well, could we start instead of on that issue, counsel, perhaps on the first issue? Sure. With respect to use immunity and the granting of use immunity, I'm sorry. We have the Supreme Court case, People v. Owsley, which says really that the State has the exclusive authority to grant use immunity. Does the defendant even have standing or any business objecting to the State's exercise of that authority? I think the defendant has standing to object because the statute, or at least in People v. Tam, the Court held that the statute's provisions still have to be complied with, and the substantive and procedural requirements of the statute have to be complied with. And that's the role of the trial court, really. In Owsley, the Court said the trial court's role is limited to examining the motion to determine whether the motion meets the procedural and substantive requirements of the use immunity statute. Once the trial court determines that the motion meets the procedural and substantive requirements of the statute, the trial court must grant the motion. So what did the trial court — what could it have done differently? Well, I think the error is the trial court did not find that the witnesses, as the plain language of the statute requires, had to refuse or were likely to refuse to produce the evidence on the basis of their privilege against self-incrimination. Well, we had one witness. The first witness didn't appear and was held in contempt of court. Isn't that correct? The day one. Right. He didn't appear in court based on just noncompliance with the subpoena to appear as a witness. But that was not an indication that he was going to invoke his right against self-incrimination. In fact, Mr. Costa said he was going to testify. He never indicated that he was at any point going to invoke his Fifth Amendment rights. I mean, use immunity — there's no dispute that the state has the power to grant use — to request use immunity. And really, there's very little requirement. There's just a basic threshold. But it's still — the state still has to make a motion requesting that use immunity be granted. And the trial court has to assure — it has to first find that the state has complied with the procedural and substantive requirements of the statute. Well, here we also had, with respect to Patton, defense counsel told the court that Patton certainly asked first for legal advice as to whether or not she had to testify. And then the record also reflects that right before she was supposed to testify, she — I think the record reflects she said she was — or they said she was freaking out, she was scared. I mean, isn't that enough for the determination that likely she might refuse to testify? I don't know, Your Honor, because really there's no case law on this. I don't know what is enough. Well, Ousley sets forth what the requirements are. In Ousley, the issue of whether the motion complied with the procedure — procedural and substantive requirements of the statute was not at issue. Everybody said the motion actually did comply with it. What was at issue was counsel objected — or the trial court, even though the motion complied with the statute, the trial court used its discretion and said, I'm still not going to grant it. And what the Supreme Court found in Ousley is once those requirements are satisfied, the court doesn't have discretion to deny the motion. But here we're saying the State didn't even get to that first step of satisfying the requirements of the statute. So are you saying that the record has to reflect that a witness actually says on the record that he or she is not going to testify? That's what's required? There are no cases. So that's what you think the standard should be? Well, I think the use of immunity statute states, on motion of the State, the trial court shall order that a witness be granted immunity from prosecution as to any information derived from the witness's testimony if the witness has refused or is likely to produce the evidence on the basis of his or her privilege against self-incrimination. So that language is in the statute. The court grants it if the State makes a showing that the witness — because the whole purpose of granting someone use immunity is to compel them to give their privilege of self-incrimination for their testimony, because they would otherwise not testify. I mean, that's the whole purpose of it. And the State never made that showing. That was counsel's objection, that the State never made that showing. So there was — if they didn't make that threshold showing, their request for use immunity should be denied because it didn't comply with the requirement that the State at least show this threshold showing of, you know, complying with the substantive requirement of the statute. What's our standard of review of the court's decision? Well, I guess, in my brief, I argued that this — because there are no cases on this, Your Honor, I argued that statutory construction should be denied. And that's why I'm saying it's a no-go because I — again, I'm reading the plain language of — Well, wait, wait. I mean, the judge is — isn't just doing this in a vacuum. I mean, the judge has certain facts before him or her. I mean, this case, the judge knew that Casas didn't appear. The judge knew that Casas was talking to his lawyer. The judge knew that Casas had charges pending about him being a gang member and that gang membership was likely to come up during this trial. And then the judge granted the motion after the state, as an officer of the court, filed a motion that said that people believe that Casas will assert his Fifth Amendment right. So what's — you're not saying the trial court has to make a specific finding, are you? I mean, is that required by the statute, that there be a specific finding, or that just the record reflect, based on the totality of the circumstances, that it was not an unreasonable decision? Well, I guess in this case, I would have to — I would — we could — even under an abusive discretion standard, I would say that because here the state didn't make the showing that it was an abusive — that the state didn't comply with the substantive requirement of the statute, it was an abusive discretion. And what the court did was that the witnesses were being offered use immunity. The court — you know, after the counsel objected, the court said, OK, I'll inquire of these witnesses. He asked Casas, you know, have you talked to your attorney? He said, not much, not much about this issue. And he said, well, do you understand the state is offering you use immunity? He's like, OK. And then the court said, are you going to testify? And he said, yeah, I'm going to testify. He didn't say, yeah, now that they're offering me use immunity, because otherwise I was going to invoke my Fifth Amendment privilege. And it seems to me that the privilege is personal to the person who's invoking it. And he — his attorney — I mean, the prosecutor — Right, right. Why is the defendant involved in this at all? That's just to see how fast — what's the defendant standing here to object to whether immunity is granted or not? I think the — it's not objecting to immunity necessarily being granted. It's objecting to procedures not being followed before the immunity is granted. She's pointing out the error of granting immunity without the state making a showing that the substantive procedures have been followed here. Before you get to the proportionate penalties argument, I wanted to just step on the argument based on the recent Supreme Court case of Murray with the unlawful possession of a firearm by a street gang member. Do you agree that the aggravated unlawful use of weapon — I'm sorry — I do agree, Your Honor. Okay. And do you also agree that the evidence at trial was sufficient to uphold a conviction on this lesser-included offense? I do agree. I do agree. Yes. And then do you believe that a conviction then should enter on the lesser-included offense? Let me answer it in this way. I agree that this Court has discretion to do that. Absolutely. They have discretion under Pennebrew. Your Honors, this Court has showed that they have discretion under Guerrero. And I guess our position would be that the takeaway from Murray was that the Supreme Court criticized the state's attempt to lessen its burden to prove the elements of the charged offense by shifting the burden to the defendant and has violated the defendant's due process right. And, you know, with respect, the Court also found that this Court's decisions in Murray and other decisions improperly excused the state from proving all the elements of the offense of unlawful possession of a firearm by a street gang member. And our position is — we fully understand Your Honors have the discretion to enter a commission, but our position is that there is language, at least in the dissent in Pennebrew, that when — given these admonitions in Murray, it's a discretionary decision. This Court does not have to go look for a lesser-included to enter judgment on. I mean, this Court can certainly do it, but our position is that that would not be the takeaway from Murray. Because Murray reversed the conviction and entered on a lesser charge that was charged and that was presented to the jury. This is asking for this Court to find this uncharged offense and enter a conviction on the lesser. If the Court does so, you know, I would just say that — And then remand for sentencing on the — It would have to be remanded for sentencing on the — yes, Your Honor. Counsel, just to take you to another direction dealing with the issue regarding the opportunity to cross-examine the witness, in your brief on page 24, you basically suggest or argue that the Court erroneous ruling deprived the defendant the opportunity to effectively cross-examine Patton. And my question is, isn't it true that the Court never barred defense counsel from cross-examining on the use of munity? Yes, but it was a conditional ruling. It was, if you question on use of munity, and the Court cautioned her strongly that, you know, I don't know why you would do that because you're opening the door to the state using the same piece of evidence to bolster their witness' credibility. And the Court emphasized it. In the Court's mind, it was more bolstering than it was impeaching. But the Court did say that it could be used, the cross-examination, in the issue of interest and bias, correct? Yeah, the Court said I have — I believe that the Court said I can see where it might show bias, but the Court came definitely much more strongly on I don't know why you would use that because it definitely bolsters the — And so by the Court giving that caveat to defense counsel, you believe that in some way restricted the cross-examination? I think it inhibited counsel because she then had to make a strategic decision. And the problem is, too, is the Court's ruling from what, you know, I can — from what I understand was wrong because I'm trying to understand how the same piece of evidence that impeaches the credibility of a witness, the same piece of evidence, I don't know of any other circumstances, is at the same time bolstering for the State. I mean, those are contradictory purposes. And no cases in the State's oversight of any have held that evidence of use immunity is both impeaching for the defense and bolstering for the State. And I think the reason why is because it would be akin to allowing the State to improperly vouch for the credibility of its witnesses because it's arguing, yeah, we gave them use immunity, so now they'll tell the truth because they don't have anything to fear. And you don't think that could, to a jury, could be considered bolstering the witness? I do think it could. By saying that now the person has use immunity, now they're going to tell the truth? I think that could be bolstering. I think that's improper. That's improper because it's saying — Well, I'm not saying that the Court would argue or even allow the prosecution to argue that. But you don't think that is an inference that the jury could have, that with immunity they now have the — that this witness is telling the truth more than any other witness? The problem is, is that the Court put counsel in this position where he thought that it was more bolstering than impeaching. Because counsel couldn't bring out — yeah, it's more, maybe they're telling this story because the State has bestowed this favor on them. But by then telling counsel that you'll open the door to the cross-examination for the State to bolster the credibility of the witness, counsel was inhibited from doing so, and so then counsel couldn't argue in their closing argument, No, actually what this shows is the State's done these witnesses a favor, and they are going to testify — they have a bias to testify favorably for the State. Excuse me just a minute, please. I know the buzzer has gone off, but you wanted to start out with a proportionate penalties argument, and we led you in a different direction. If you'd like to take a couple minutes and make that argument now, that would be fine. Your Honor, I do, but I do have a caveat, because I am — I have a — I'm concerned about the procedural posture of this case now, especially in light of the Supreme Court granting the PLA in-house. Do you want to explain your concern to us? Yes, yes. This is important for several reasons. I mean, in our open brief, we raise the proportionate penalties challenge relying on appellate-level hearings, and because in hearings it was raised for the first time on appeal there, and it would — Just speak slowly, please. These are important issues, and we want to follow what you're saying. Sure. So start again on that, please. Okay. So in the appellate, we — initially, if you look in our open brief, our proportionate penalties challenge is based on appellate-level hearings, where the court found the reasoning of Roper, Graham, and Miller applied to the defendant as a young adult, and based on that reasoning, found a de facto-like sentence violated Illinois' proportionate penalties. And in that case, that issue was raised for the first time on appeal. Then, after we filed the brief, Supreme Court hearings came out. Right. In 2018, October 18th. Right. Right. And it signaled, you know, yes, you can raise this claim, but not for the first time on appeal. It's premature because we need an evidentiary hearing where the defendant should be able to show how, quote, the evolving science on juvenile maturity and brain development applied to his facts and circumstances. So does that mean there should have been something below, then, put on the record at the trial court level? That it had to — this issue had to have been raised to the trial court, and some sort of evidentiary hearing been held in front of the trial court. With respect to that? I don't think that's what Harris held. At sentencing? No, I don't think that's what Harris — they wouldn't have even had Harris in front of them at that point. What Harris — Illinois Supreme Court — No, but I'm saying, what are you suggesting? Where is that hearing — Right. Exactly. Where is that record to be made, then? In post — the Supreme Court in Harris said the more appropriate forum for this is post-conviction proceedings. That's what the Supreme Court said. You're saying you think that's what — To develop the record more fully. Exactly. And I can even point to — I mean, if you read the last paragraph, and they cite the people versus Cherry, and they say that we've often said that these type of claims are more appropriately raised in post-conviction proceedings. That's because it wasn't raised in Harris in the trial level, but in your yellow brief, your original reply brief, you indicated it was raised in this case. No, I — what I indicated in my original — in my reply brief is that in light of Harris, which came out before the reply brief, this Court might be able to consider a Leon-Miller type of proportionate penalties challenge. And then I ended with — with my last paragraph was, but if this Court still believes this is more of a Harris-type challenge, then you're — please, I'm asking that your decision not foreclose the defendant. I mean, make a finding that it's premature. The Harris-type challenge is premature. It's an as-applied challenge. Right. And as-applied. And as-applied. And so don't foreclose him from — Doing it later on. Exactly. Okay. So then, after we cut out the reply brief — Okay. Yeah, House was issued, which said you could raise it. Are you — the record — if a proportionate challenge was raised below, the record could be sufficient. But in light of the granting of the PLA in House, my concern here now is just that how thoroughly the record has to be developed to actually present this issue is just an open question that will be most likely resolved in House. Well, I believe we know it's more than what's contained in a pre-hearing memorandum, correct? Pre-sentence investigation. Right. I mean, according to Harris, it seems that it has to be more precise and connected to the whole Miller, Roper, Graham, because you have to show this is the standard Harris says, how the evolving science on juvenile maturity and brain development apply to emerging adults' facts and circumstances. So what — In general or as applied? As applied. No, as applied. This is not a facial. Okay. It has to be applied. And so you start off as an as-applied challenge, you want it to remain as applied, and you're somewhat conceding that perhaps the record was not fully developed below on that issue. Right. And I just don't want to jeopardize my client's ability in the future to do that. I mean, I would say, if Your Honor's agree with that, that I would prefer that the record remain premature, that this has to be — As opposed to race judicata. Right. Exactly. Okay. All right. Thank you for clarifying that. Okay. Okay. Thank you. Thank you. All right. Thank you. All right. Ms. Lee? Good afternoon, Your Honor. I'm Stephanie Lee from the State. I'll address the immunity issue as well first. I agree with the Court's comments that essentially that is a tool for the prosecutors to use to compel their witnesses to testify. In this case, in particular, we actually had it clear on the record that they consulted with their attorneys or they had thought about it. And I would point the Court to page 5 and 6 of my brief where some of the Court's and your discussions with an attorney, do you intend to testify? And he said, yes. And also, the Court specifically said, I will find that they have the ability to offer the immunity. So there were findings in this case. Counsel? Yes? The trial court in this case did make the similar inquiry of Patton. Is that correct? After Patton, he said — that's on page 6 — that she was — he was going to confirm with her that she was testifying with use immunity and that she had a right to serve her Fifth Amendment but for the immunity. And then when she testified, he asked her if she understood that he was — that the State was providing her with immunity, and she said she did. I mean, he never asked her if she would invoke her Fifth Amendment right. Is that correct? He never specifically said, are you going to? But based on the fact that he said, are you testifying with this agreement of immunity, essentially that showed that she was likely to invoke. In almost every case, I can't imagine when the State — when the defendant really would have a stake and be able to show prejudice from this because — I mean, what would be the alternative? You just ask the direct question. I know you don't have to say, are you going to plead the Fifth, because you can also find that the person was likely to plead the Fifth, which would be based on facts in the record, circumstances. And as was discussed during Kossel's argument, there definitely were indications with Kossel that he wasn't going to show up to court. He had an attorney. They had made these agreements prior. And then they also said they had discussed this with Pat and prior — the State had. So from those, you would certainly make that inference that they were likely to plead the Fifth. And in fact, it does appear to me that the judge made essentially those findings that they were testifying with use of immunity in order to avoid having to plead the Fifth. With respect to the standard of review that should be applied in looking at this issue? Well, I agree that it would be statutory construction in terms of whether or not — the issue of whether or not — how much say the defendant would have in this. But the problem is that in this case, you actually have some facts to show you that the court did make these findings, so it's sort of a moot point. But in other cases, it might not be. The problem is if you're going to then look at, well, what would the remedy be? There's no remedy in the statute. And especially in this case, they've already testified, so I don't know — you can't undo that. But for most cases, the defense isn't going to have much to say in that because there's no prejudice. All that it would do is ask that question. But it doesn't have to be, are you going to? So I don't think you have to ask a witness, are you likely to? Likely to means you're making an inference from all of the factors. The factors here were the State said, this is how we got these witnesses to come in here and testify, and we promised them immunity. So how would you ever show that they weren't in that circumstance when the State has said, we made this promise, that they weren't likely to invoke their Fifth Amendment? But in this case, I really do believe as to the judge's — to the extent the judge has to make findings, I do believe there's enough in the record, and like I said, it's outlined on page five and six of my brief, but there's enough here to see that the judge really did consider those factors, and there's enough to say made them, which would then be considered manifest weight of the evidence, in my opinion. I don't agree with abusive discretion because it does say once the factors are met, there's no discretion, so it would be whether the judge's findings were proper, if that's going to be a consideration. And in this case, I definitely don't think that it should be. With respect to the issue of cross-examination and some of the questions that Justice Bridges asked, did the defendant preserve this issue? Was it preserved below? I pulled the motion one more time because of the reply brief. I believe it was not preserved. They preserved their motion on page — I'm sorry, 616 of the record. I'm sorry. 616 — sorry, I apologize. It's actually page 615 of the record, and they did say that the defendant was limited in the cross-examination of the witness. But that was incorporated into why we were prejudiced from the judge not making the proper findings. So we weren't — That was in a post-trial motion? This is the post-trial motion, and it's on page 615 of the record, of the common law record. But the thing is, if you look back at the earlier part of their post-trial motion on page 609, they actually made an allegation in a totally other context about depriving the defendant of effective communication as to a totally other issue. So when you got to this issue, what they said is, Court should have made these findings. The Court didn't. And the reason we're prejudiced is because we were restricted. But they don't actually allege that they were improperly restricted, and that's why I say it wasn't preserved. Regardless, though, as a factual matter in this case, I don't believe that they were in any way restricted. The judge made the opinion known that maybe this would actually bolster for the state. The judge said, if you do go that route, then they can respond, which is fair. The state should absolutely have a response to evidence that's come in or impeachment evidence. If we have a response or an inference that we can make on behalf of the state, we would have that right to do that. So the judge said, I'm not letting the state front it. But if you open that door, then they can cross. But the judge also said, and I'm not being flippant, this is your choice if that's the strategy you want to take. And these were strategic decisions, were they not? I mean, the defense counsel did cross-examine CASAS. Exactly. So there was cross-examination there. And before making a decision with respect to Patton, defense counsel discussed this with Patton and decided then not to question Patton. Correct. Correct. So are these strategic decisions? Absolutely. I think he has to pass it to discuss with his client or her client in that case and decided, made a choice not to do that. Well, especially since counsel was going to ask for a 3.17 instruction, which may not have had any weight with the unit. Right, right. I mean, accomplice instruction really has no weight if someone's getting a unit. Right. Actually, in that regard, I would point out that they actually ended up getting, in the end, the accomplice instruction that they wanted. And that's on page 1915. It begins where it was discussed. And eventually, in the jury instructions, page 2077 and 2078, that was when the accomplice instruction that they wanted was actually given to. So just for that perspective. You're arguing, to shift gears a little bit, you're arguing that you should be allowed or the state should be allowed to retry the defendant in the UW Street Case Trial? Yes. Our position is, at the time of the trial, we were given parameters of what our expert could testify. This particular testimony of this expert essentially said this meets the statute. So he didn't give specific dates and times of offenses, which, of course, post-Murray now we know the court will absolutely expect that. The problem is, if you look at the types of bad acts that you're going to be asking the state to put into evidence now, because it has to go back to the original passage of the statute, you have to have at least one bad act that's after that, and one within five years, either before or after, maybe unrelated to this particular defendant. Now you're going to start litigating, also, whether or not this gang is the Latin King's East Side, West Side. It's going to open up a lot, and it's going to prejudice the defendant if we have to put these in, as an element of our case. We certainly will. But why would the state, at that point, it would have been gratuitous. And so the expert was testifying based on current authority, and if you look at the moment, then it's here. Wasn't the expert in Murray testifying under current authority? It's the same expert. And the same statute. The statutory language hadn't changed. Correct. The statutory language is the same, but we had had interpretations, obviously, that differed from before Murray, which said you can meet that through the expert. And so we were relying on that. If anything, it was a lack of foundation for the opinion, which under the evidence rules, they don't actually have to give the basis for their opinion until they're crossed. We obviously, in light of Murray, it didn't meet those elements. Although in this case. The four judges in Murray found that the evidence was insufficient. When I looked at Murray, if you look at the concurrence specifically discusses it as an insufficiency per se. The argument that we're making now is not exactly raised or decided in Murray, in my opinion. On the other hand. In the first two judges, I don't even know what to call the first opinion in Murray. I guess plurality opinion says we hold that the state failed to prove that the Latin kings were street gang is defined by the end. Right. And in that case, because they said we didn't have the two elements. So if that I understand that that's required. We also, in this case, have the defendant himself admitting that he was in a game. In effect, wanting to rely on it is his for me sentencing issues. But regardless, we do think that if in the alternative, in this case, all of the evidence was presented for the lesser included offense. And so we would ask that if the court is going to find that it in fact was a sufficiency issue, then it should just be reduced. And yes, we would have to resentence on that. Although it is running concurrent in this case. And then with respect to the proportionate penalties argument and what counsel suggested, she's asking us in light of Harris to find perhaps that the record was premature. Correct. I think I said that it was premature because the record has not been developed. Correct. The only thing that makes this possibly a moot point in this case is the court said specifically I'm considering the Murray fact or the Miller factors and discounting for that. So it's essentially a moot point here because the judge said I considered all those Miller factors. If defendant to the extent thinks that there could be maybe more draw out, that's a worse conviction. The issue here is whether the judge considered going outside of the mandatory minimums. Because under buffer now, we're looking at a 40-year ceiling, it looks like. Well, you have a 22-year-old here, and that does make this case different. I know. The issue, I mean, I understand the State's argument is that this doesn't even apply to a 22-year-old. Right. Let's just assume for a minute that it did. You have this 40-year cap and buffer, correct? I mean, that's what just came out. 40 years de facto life for a juvenile. And the mandatory minimum here was over 40. The mandatory minimum with the two enhancements would have been over 40. The problem, again, is I don't think you're going to end up applying to a 22-year-old. Because we also now have the new legislative acts that actually one of them cuts it off at 21. And at a certain point, you're going to end up saying you can't sentence any adult because they're de facto deaf. So you can't really say that a 22-year-old, at what point does that line end? Because at a certain point, we all start declining. And so I don't see how the line has never been drawn at 22. And in this case, you actually have the judge saying, I consider those Miller factors. So even more importantly in this case, it wouldn't be this case to decide that. Specifically the age, the defendant's age as well. Yeah, and he mentioned Miller and said, I understand the law doesn't require it, but I am considering them. And so we can't really use this case. I don't want to feed that horse, but considering them in the framework of this mandatory minimum of 56 years or whatever it was. I mean, the issue of Miller, if you're considering the Miller factors for someone who was, let's say, 16, then you're considering doing away with the mandatory minimums. You're basically absolving the defendant from the mandatory minimums in order to bring things down to not a de facto life sentence. That's the remedy in those cases. Here, there's no indication that the trial judge considered going below the mandatory minimums. No, there's nothing in the record to say below. But he actually went a little bit above the minimum on one of the cases, which shows that he thought that you needed more than the minimum here. And the other thing is, again, if you are going to say this, you'd also have to figure at what point then it is declining and you're no longer able to sentence. Because if the Constitution requires rehabilitation, now you get to certain people who can no longer be rehabilitated because they're already past the life sentence. And that's the problem there, too. I just have one other area regarding the videotape. And the State had indicated here that if requested, they would have been able to redact the objectionable portions from the videotape. Is that correct? Actually, what the court has said was that if it's going to be the court's ruling, then we would have to figure out a way to do that. Right. And that was their only concern was the manner or the way to do that. But they could have redacted that material if it was found to be objectionable. Is that correct? Well, I would absolutely not say the State agreed in this case. What had happened was it was presented, we're objecting. The State said, well, if the court's going to say that, we will figure out a way to do it. But it's not going to be easy. And then immediately the judge went into, I find this is a miscible, cited two cases, explained why it was coming in. So the State never had to or even it never became an issue for the State to agree or not agree other than just saying, well, if the court's going to order us to do that, yes, we will, of course, figure out a way to do that. In this case, though, you really do have, it is lengthy, I understand that, but it's because the defendant kept, first he said he wasn't even there. Oh, I was picked up after the fact. Then he said, oh, wait, wait, okay, I'll tell you now. Now is the real thing if you want to hear what really happened. And it was building. And as counsel says, you know, he eventually admitted. Well, we have to see why that was. It was a consciousness of guilt going along the pattern of a little bit more of, he was trying to actually exculpate himself through his statements. And so it was all volunteered by the defendant himself in an attempt to actually prove less culpability. Thank you very much. We'd ask the court to adjourn. Ms. Eakin. Ms. Eakin. Ms. Eakin, if I could just start off. The counsel raised an interesting issue in my mind regarding the remedy here. You have witnesses who, according to you, didn't say they weren't going to testify. Therefore, they shouldn't have been given immunity. So you have witnesses who either were going to testify without immunity or who were going to refuse to testify and get immunity. You're asking for a new trial for your client because the trial judge never found out whether they were going to testify? But, I mean, it just seems to me like the remedy doesn't match what went on. And I think that's why, in this case, the first and second issue kind of have to work hand-in-hand. Because it seems to me that, really, if you look at the fundamental problem here, it seems that the court and the state had this idea that what used immunity is is just this unfettered power by the state, that they just can give it to their witnesses. And, actually, it helps them because it gets their witnesses to testify and it also bolsters their credibility. And the problem is that then, after they were granted the immunity, that's how the trial proceeded. So, for instance, when you get Casas on the stand, the state literally asks, well, even when Patton first came to the courtroom, the prosecutor said, I just want to front the fact that the only consideration she's been given is whatever she says on the stand would not be used against her, as if that's not a promise, as if that's not a benefit to her. And then the problem is, is that on directive, Casas, he says, he asks, have you been given any promises or any special consideration by the state's attorney's office in exchange for your testimony? And Casas says no. And so I think, I mean, I'm giving the prosecutor the benefit of the doubt here  It's just we have this power when we can grant it, because otherwise he would be eliciting false testimony, right? I mean, I can only interpret that as you believe that giving power, that this is a power that has no limits and that the defense can't use it. So defense counsel was then, it's not strategic. She's forced to, even though she knows, if I bring this up, I'm opening the door, but she's forced to correct the state's false inference. And she asked, have you been given promise anything? Haven't you been given immunity? And he's like, I don't know. I'm not sure. I don't believe so. And so, of course, the prosecutor pounced. Well, in fact, at that point, when she asked it, the state objected and said, she can't go into that. And so, I mean, I was so confused and so mixed up. And at the end, you know, the prosecutor asked if anyone forced Casas to testify. And he replied, no, but taken as a whole, what you get from this is that giving a witness use immunity is not any type of benefit to them given by the state. And it's worse with Patton's testimony because the court's, you know, this unfounded restriction that if you impeach, you open the door to use immunity was even more prejudicial. Because when counsel requested an accomplice instruction, the court first said no because, which I think is backwards, the court said no because that's inconsistent with use immunity. Because by granting use immunity, the jury shouldn't view her testimony with any skepticism. In fact, if you look at a case in my brief on page 23, People v. Wilson, it's the exact opposite. The reason an accomplice witness testimony should be reviewed with skepticism is because oftentimes it's given under a gift of leniency or a grant of immunity. But because counsel felt inhibited by if I impeach her on this, and in fact then the court said the reason the court granted it was like, oh, but you know what? You abided by my rule and you didn't impeach her. So under those circumstances, I am going to give it because, quote, that instruction will not, quote, trample on Patton having use immunity. I mean, I just think there was a fundamental misunderstanding here. And counsel should have been able to argue both, yes, she was involved. If you look at this accomplice instruction, guess what? Because she's an accomplice, she got use immunity. And she was prevented from doing that. And this idea that it wasn't preserved is, I mean, I haven't had many cases where it was preserved as well as this. Excuse me for stopping you, but you said she was prevented from doing it. Can you give us specific facts as to what prevented her from doing it? The court's ruling that if you impeach, you are opening this to the state to bolster the credibility of their witness. And that's the extent of what you believe. That's improper. Excuse me again. Is that the extent of what you believe prevented her from going further into the cross-examination? Absolutely, because she specifically took a break and she told the court, before I cross-examine, I want to talk to my client about bringing up this use immunity with Patton. So she specifically said that. And then, I mean, first of all, beyond the fact that she raised the court's error, if I may conclude, I would like to address, though, in terms of the proportionate penalty issue, the court considering those similar factors. But I guess I would just say on page 4 of my reply, I would ask that this court look at how I address the state's argument that this issue was forfeited, because I think it was raised precisely as it is now. And I just want to say, yes, the court considered the Miller factors, which is pretty remarkable, actually, because he really didn't have any authority to do so for a defendant at age 22. But to your point, Justice, where he raised that problem, the court said, you know, the mandatory sentencing scheme applied to Ricardo significantly limits my discretion. And he says, you know, it's had some traction with 18-year-olds and under, but I just don't think that there's case law for me to find, case law for those over 18 for me to find a proportionate penalties, you know, challenge successful here. But he said, but he felt compelled based on, and there is evidence to support his findings, to say, I'm going to go ahead and consider them to the extent I can, where I do have discretion to the extent I can, I will consider them. But he clearly felt, you know, restrained by the discretion and the mandatory sentencing scheme. Has Miller been applied to a 22-year-old here? Not to my understanding, but interestingly, right now, pending in the Illinois Supreme Court, this whole line drawing issue was raised in Harris. I mean, the dissent made the comment that, okay, 20-year-olds, 30-year-olds, where do we draw the line? And the majority's response was all as applied proportionate penalties challenges are specific to the defendant. And so that's really a red herring. And if you look at Harris Supreme Court, they don't draw any lines. You know, they say that this is a, I think that they're signaling. They don't draw a line at 21. They say, you know, you have the opportunity to raise this issue as an emerging adult in a post-conviction proceeding. But interestingly, there's actually a case pending in the Illinois Supreme Court now, where the appellate versus, the appellate court, People v. Cody, found that the principles of Miller and Atkins v. Virginia on intellectual disability, those procedures should be applied to a 46-year-old intellectually disabled defendant who originally had a mandatory life sentence that the appellate court reversed. Then he got sentenced to 50 years. And again, they said that that violates buffer. And so that case is now pending in the Illinois Supreme Court case. So I don't think there's a line drawing at this point. Thank you. Okay. Thank you very much, counsel, both of you, for your arguments today. The court will take the matter under advisement and render a decision in due course. We are adjourned for the day.